## LITTLE et al. *v.* MANAGERS OF THE CITIZENS BANK OF LOUISIANA.

The post-notes issued by the Citizens Bank of Louisiana, payable to order, at three, four and five years from date, out of the proceeds of the sale of the bonds of the State loaned to that institution, formed a part of its capital and not of its circulation; and they are not exempted on the ground of being circulated as money, from the laws applicable to stolen property.

To entitle a possessor of stolen property to demand from the owner the price paid for it before the latter can obtain restitution of it, the possessor must show that he bought it at public auction, or from a person in the habit of selling such things. C. C. 3473.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. *J. Barker* and *T. A. Clarke*, for the appellants. *Pitot*, for the defendants. The judgment of the court was pronounced by

ROST, J.[*] The plaintiffs sued the defendants on certain post-notes issued by them. The defendants filed a general denial, specially denying that the plaintiffs had acquired the post-notes in good faith; and further resisted the claim on the ground that the notes had been stolen from *Boutin, Gally & Co.*, to whom they had been adjudged by a decree of the court to pay the amount of them. They cited in warranty *Boutin, Gally & Co.* who appeared and joined in the defence. There was judgment in favor of the defendants, and the plaintiffs appealed.

On the night of the 23d of January, 1844, the store of *Boutin, Gally & Co.* was broken open, and the notes sued upon, together with others, were stolen from them. Early the next morning they wrote advertisements giving a description of the notes, which were sent to all the brokers' offices in the city, and published as soon as practible in the newspapers in New Orleans, Cincinnati, Louisville, St. Louis, New York, Philadelphia, and Boston. They were also forwarded to Europe. The papers in which the advertisements were inserted at the north, were the Journal of Commerce and Courrier and Enquirer of New York, the North American of Philadelphia, and the Boston Daily Advertiser. The witness, *John A. Iselin*, of New York, to whom the advertisements had been sent for publication, wrote, in answer: "Nous avons fait publier les détails du vol dont vous aviez été victime dans deux de nos journaux, ainsi que dans un à Philadelphie et un à Boston. Du reste, tous les journaux que nous avons vus en ont fait une mention détaillé."

Between the 9th and 13th of August following, this same person had a conversation with *Jacob Little & Co.*, who stated to him that they had not in their possession, and had never held, the post-notes advertised. In order to ascertain the fact, they examined their books in his presence, and the only post-

---

[*] EUSTIS, C. J., being a stockholder in the Citizens Bank, did not sit in this case.

notes shown to have been purchased by them, were purchased in February, 1844, from an english house, and were not those upon which they sue. There are in the record several letters of the plaintiffs corroborating this evidence, and stating the fact that they had neither purchased those notes nor sent them to *Horace Bean & Co.* of this place, in whose hands they appear to have been at the time the plaintiffs wrote the letters and made the declarations alluded to. In one of those letters, bearing date the 13th August, 1844, immediately after the examination of their books, made in presence of *Iselin*, they say : "We find, on examination, that the $4,900 Citizens Bank post-notes returned by you a few days since has been in error, as the only Citizens post-notes we have sent you, since May 25th, 1843, is as per statement annexed. We shall hold yours here till we hear from you again. *Messrs. Maitland, Comrie & Co.* sold us the Citizens' post-notes we sent you on the 27th of February, the same day on which they received them from England. Consequently they could not have been those stolen in New Orleans on the 23d of January."

On the 13th of August, then, the plaintiffs absolutely denied having any knowledge of these post-notes, and held them on account of *Horace Bean & Co.* They now sue upon those very notes, and attempt to falsify their own positive declarations by the testimony of one of their clerks, a young man 23 years of age, who swears that the plaintiffs did buy those post-notes on the 22d June, 1844; that they paid for them 35 cents on the dollar; that they received them in the usual course of business from a person unknown, and paid the current rate for them. He farther states that the plaintiffs take no newspapers; that they are not generally acquainted with every thing that transpires about bank obligations. In the cross examination he swears to the negative fact, that the advertisement of *Boutin, Gally & Co.* did not come to the knowledge of the plaintiffs. The only evidence, if evidence it be, bearing on that part of the case, besides the testimony of this unfortunate witness, is a letter of the plaintiffs to *Horace Bean & Co.*, bearing date the 3d of September, 1844, in which they say : "We were in error about the Citizens' post-notes; were led into it by our clerks. It appears that we bought them of *Joseph Cisco*, whom we do not know."

How this fact was made to appear to them we are not informed, and we do not perceive how they can extricate themselves from the dilemma in which this letter places them. If the name of *Joseph Cisco* was on their books they must have found it, and with it the transaction with which it is connected, when they searched for it in the presence of *Iselin*, If, on the other hand, it was not on their books, they and their clerk declare that their vendor was unknown to them, and they could not have recollected a name which they never knew. The statement that they were led into error by their clerks, will not bear examination. One of those clerks swears that the post-notes were offered at the counter, and that, after some negotiation, the plaintiffs bought them. He says they did not come into the plaintiffs' possession by his aid, interference, or advice; and mentions that, at the time of the purchase, other clerks were absent. If it were true, as argued at bar, that a clerk might have purchased those post-notes without making an entry in the books at the time, it is not true that a clerk could send them to *Horace Bean & Co.* without instructions from his employers; nor could we bring our minds to believe that any commercial house, dealing in good faith, would make such a transmission without keeping any re-

LITTLE
*v.*
CITIZENS BANK

cord whatever of it. This is as difficult to explain as the fact that, the plaintiffs receive no newspapers.

The attempt of one of their counsel to justify this transaction by their habitual negligence and looseness in the management of their affairs, is not to be tolerated. Neglect, such as this hypothesis would exhibit, is incompatible with good faith. The oath of their clerk that they had no notice, is to be deplored, but cannot be believed; and they can make nothing by throwing their affairs into confusion, intentionally debarring themselves of the means of knowledge usually resorted to by exchange brokers. Besides these circumstances, one of the post-notes is manifestly altered, and a number inserted in it different from that it originally bore, and under which it had been advertised. This unexplained circumstance stamps the whole transaction with bad faith, and we are clearly of opinion that, under our rules of practice, the defendants may show bad faith in the holder. Their plea that the plaintiffs did not acquire the post-notes in good faith, but purchased or acquired them with a full knowledge that they had been stolen from *Boutin, Gally & Co.*, cannot be viewed otherwise than a special plea of *mala fides*.

Under the rules of the commercial law we would hold this to be a clear case against the plaintiffs. But we are of opinion that it does not come under those rules, and that the court below properly considered that it was to be governed by our local laws on the subject of stolen property. In France similar dispositions of the Napoléon Code are held to apply to promissory notes, when made payable to bearer or endorsed in blank, and we consider it a safe rule of interpretation that exceptions to substantive laws made for the preservation of property are not to be presumed. 2 Troplong, Préscrip. no. 1065.

The post-notes of the Citizens' Bank were issued payable at three, four and five years, and were intended to be paid out the proceeds of the sale of the bonds loaned by the State to the bank. They were a part of its capital, not of its circulation. In the legislation that has taken place in relation to that institution they have never been considered as circulation, either by the legislature or the board of currency, and they cannot be so viewed on general principles. They were payable to order, and at remote periods. They bore interest till paid, and some of the *coupons* of interest are attached to those upon which this suit is brought. It is vain to say that they were received in New York by the plaintiffs as money, and that the laws concerning stolen property are inapplicable to them. *Boutin, Gally & Co.* strictly fulfilled the requisites of art. 2259 of the Civil Code. Upon proof of that fact, in a litigation between them and the defendants, the latter were adjudged to pay them the amount of the post-notes, upon their giving bond to refund whatever the holders might be entitled to recover upon them. *Boutin, Gally & Co.* having complied with the law, the holder could in no case recover any thing more than the price he paid (Civil Code, art. 3473); and to be entitled to recover that price he must show affirmatively that he bought the post-notes at public auction, or from a person in the habit of selling such things. The plaintiffs in this case have proved neither. Their evidence, if otherwise entitled to credit, would only go to show that they bought the post-notes at private sale from a person unknown to them, and, as we think, much below their market value at the time of the alleged purchase.

There is in the record other evidence, not material to the view we have taken of the rights of the parties, and which on other grounds we cannot no-

tice, except for the purpose of expressing our regret that counsel should persist in testifying for their clients in spite of the pains we have taken to satisfy them that nothing is gained by so doing.